**No. 25-10933**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

CLARK CHAMBERLIN, *by and through his parents and co-guardians*, TODD CHAMBERLIN and KELLI CHAMBERLIN,

*Respondent-Appellants*

v.

MICHAEL GOLDBERG, CHAPTER 11 TRUSTEE

*Movant-Appellee*

Appeal from the United States District Court
for the Middle District of Florida

District Court Case No.: 8:24-cv-01962-WFJ
Bankruptcy Court Case No.: 8:24-bk-00676-RCT

---

**APPELLANTS' OPENING BRIEF**

---

David L. Ferguson FBN 981737              Thomas H. Leeder FBN 746401
Jonathan M. Streisfeld FBN 117447      **LEEDER LAW**
**KOPELOWITZ OSTROW P.A.**              8551 West Sunrise Blvd. | Ste. 202
1 West Las Olas Blvd., Suite 500          Plantation, FL 33322
Fort Lauderdale, Florida 33301            Telephone: (954) 734-2382
Telephone: 954-525-4100                      pleadings@leederlaw.com
ferguson@kolawyers.com
streisfeld@kolawyers.com

*Counsel for Appellants*

**No. 25-10933**
*Clark Chamberlin, et al. v. Michael Goldberg*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure Rule 26.1 and Eleventh Circuit Rule 26.1-1, Appellants, Clark Chamberlin by and through Todd Chamberlin and Kelli Chamberlin, provide the following Certificate of Interested Persons and Corporate Disclosure, which includes a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

"In bankruptcy appeals, the CIP must also identify each debtor, the members of the creditor's committee, any entity which is an active participant in the proceedings, and other entities whose stock or equity value may be substantially affected by the outcome of the proceedings." 11th Cir. R. 26.l-2(a).

## I.    CORPORATE DISCLOSURE

There are no nongovernmental corporations that are parties to this proceeding.

CP- **1** of 5

**No. 25-10933**
*Clark Chamberlin, et al. v. Michael Goldberg*

## II.    INTERESTED PERSONS

1.    Akerman LLP, *Attorneys for Appellee*

2.    Chamberlin, Clark, *Appellant*

3.    Chamberlin, Kelli, *Appellant*

4.    Chamberlin, Todd, *Appellant*

5.    Dicks, John L. II, *Attorney for Appellee*

6.    Ferguson, David L., *Attorney for Appellants*

7.    Fiore, Kristen M., *Attorney for Appellee*

8.    Goldberg, Michael, *Appellee*

9.    Herter, Caroline, *Attorney for Appellants*

10.    Jennis Morse, *Attorneys for Appellants*

11.    Jennis, David S., *Attorney for Appellants*

12.    Kopelowitz Ostrow Ferguson Weiselberg Gilbert, *Attorneys for Appellants*

13.    Leeder Law, *Attorneys for Appellants*

14.    Leeder, Thomas H., *Attorney for Appellant*

15.    Ostrow, Jeff, *Attorney for Appellants*

16.    Stavros, Michael, *Attorney for Appellants*

<u>**No. 25-10933**</u>
***Clark Chamberlin, et al. v. Michael Goldberg***

17.    Streisfeld, Jonathan M., *Attorney for Appellants*

18.    Wirth, Steven R., *Attorney for Appellee*

## III.    BANKRUPTCY DISCLOSURES

19.    Debtor: The Center for Special Needs Trust Administration, Inc.

20.    Members of the creditor's committee:

Creditor 08-2102

Creditor 18-10862
c/o Mark D. Munson, Esq.
500 N. First Street, Suite 800
Wausau, WI 54402
mmunson@ruderware.com

Creditor 06-0652
c/o Carol Mulholland
2457 Guiana Plum Dr.
Orlando, FL 32828
cmulholland@compwise.services

Creditor 08-2105
c/o Amparo Perales
8085 SW 24th Street
Ocala, FL 34481
familinperales8@gmail.com

Creditor 08-2098
c/o Rebekah Bowman
610 SE 20th St.
Cape Coral FL 33990
marbekahbowman@yahoo.com

**No. 25-10933**
*Clark Chamberlin, et al. v. Michael Goldberg*

21.    Active participants in the bankruptcy case, and other entities whose stock or equity value may be substantially affected by the outcome of these proceedings:

Murray, Megan W., *Counsel to the Unsecured Creditor's Committee*

Underwood Murray PA, *Counsel to the Unsecured Creditor's Committee*

Underwood, Scott A., *Counsel to the Unsecured Creditor's Committee*

### CERTIFICATION PURSUANT TO RULE 26.l-3(b).

I hereby certify, pursuant to 11th Circuit Rule 26-l .3{b ), that no publicly traded company or corporation has an interest in the outcome of the case or appeal. I hereby further certify, except as disclosed above, I am unaware of any actual or potential conflict of interest involving any judge assigned to this case and will immediately notify the Court in writing upon learning of any such conflict.

### DISCLOSURE STATEMENT PURSUANT TO RULE 26.l(c)

Appellants state that other than The Center For Special Needs Trust Administration, Inc., identified above, there are no debtors not named in the caption.

<u>**No. 25-10933**</u>
*Clark Chamberlin, et al. v. Michael Goldberg*

<u>**CORPORATE DISCLOSURE STATEMENT**</u>

To the best of Appellants' knowledge, no party to this appeal is owned by a publicly held corporation or other parent corporation that owns 10% or more of its stock.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully request oral argument. This case presents an important issue that that will likely have significant impacts for the underlying bankruptcy proceedings, Appellants' class action, and bankruptcy law in general. Appellants respectfully submit that oral argument would assist the Court in resolving the issues presented.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. CP-1

STATEMENT REGARDING ORAL ARGUMENT.......................................................i

TABLE OF CONTENTS ................................................................ ii

TABLE OF CITATIONS.................................................................iv

JURISDICTIONAL STATEMENT .......................................................... vii

STATEMENT OF THE ISSUES ................................................................1

STATEMENT OF THE CASE................................................................1

    (i)    Statement of Facts................................................................1

    (ii)   The Course of Proceedings and Dispositions in the Courts Below ..............6

    (iii)  Statement of the Standard of Review.........................................13

SUMMARY OF THE ARGUMENT .......................................................13

ARGUMENT AND CITATIONS OF AUTHORITY ............................................16

    I.    The District Court Erred In Holding the Class Claims Are Subject to the Automatic Stay as Property of The Estate.......................................16

        A. Special Needs Trust Property Is Excluded From The Estate ...................17

        B. The Class Action Alleges Beneficiaries' Direct Claims...........................19

        C. The Class Claims Cannot Be Estate Property Because Appellee Lacks Standing to Bring Them................................................25

    II.   The Class Claims Are Not Subject Automatically Stayed as Claims Against the Debtor...........................................................28

A. Actions Against Non-Debtor Joint Tortfeasors Are Not "Against the Debtor" or Automatically Stayed ...............................................29

B. No Unusual Circumstances Support Extending the Stay to Class Defendants, Even Where the Debtor's Conduct Is a Relevant Factor .....31

III.   The Class Action Is The Proper Vehicle to Litigate Beneficiaries' Claims...34

CONCLUSION ...................................................................................................37

CERTIFICATE OF COMPLIANCE .......................................................................36

CERTIFICATE OF SERVICE ..............................................................................36

# TABLE OF CITATIONS

**Cases**                                                                                                    **Page(s)**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ........................................................................31, 33

*Arduin v. McGeorge*,
  595 So. 2d 203 (Fla. 4th DCA 1992) ...................................................................22

*Begier v. I.R.S.*,
  496 U.S. 53 (1990) ...............................................................................17, 18, 19

*Caplin v. Marine Midland Grace Trust Co.*,
  406 U.S. 416 (1972) ...................................................23, 24, 27, 33, 34

*Commodore Holdings, Inc. v. Exxon Mobil Corp.*,
  331 F.3d 1257, 1259 (11th Cir. 2003) ..................................................................ix

*DeWitt v. Daley*,
  336 B.R. 552 (S.D. Fla. 2006) ........................................................................31, 32

*E.F. Hutton & Co. v. Hadley*,
  901 F.2d 979 (11th Cir. 1990) ...........................................................................24

*Feltman v. Prudential Bache Sec.*,
  122 B.R. 466 (S.D. Fla. 1990) ...........................................................................35

*Fortier v. Dona Anna Plaza Partners*,
  747 F.2d 1324 (10th Cir. 1984) .........................................................................28

*Harrington v. Purdue Pharma L.P.*,
  144 S. Ct. 2084 (2024) ...............................................................................31, 33

*In re Ellingsworth Residential Community Ass'n, Inc.*,
  --- F.4th ----, 2025 WL 78887 (11th Cir. Jan. 13, 2025) ................................. vii

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) ...........................................................................32

*In re Icarus Holding, LLC*,
  391 F.3d 1315 (11th Cir. 2004) .........................................................................26

*In re J.H. Inv. Services, Inc.*,
  413 Fed. App'x 142 (11th Cir. 2011) .......................................................................18

*In re Marrs-Winn Co., Inc.*,
  103 F.3d 584 (7th Cir. 1996) ...................................................................................17

*In re Meridian Asset Mgmt., Inc.*,
  296 B.R. 243 (Bankr. N.D. Fla. 2003) ....................................................................22

*In re Montreal, Maine, & Atlantic Railway, Ltd.*,
  888 F.3d 1 (1st Cir. 2018) .......................................................................................18

*In re Rocco Co., Inc.,*
  No. 10-18799 DHS, 2014 WL 7404566 (D.N.J. Dec. 29, 2014) ........................22

*In re Seven Seas Petroleum, Inc.*,
  522 F.3d 575 (5th Cir. 2008) ........................................................................18, 21, 22

*In re Xenerga, Inc.*,
  449 B.R. 594 (Bankr. M.D. Fla. 2011) ...................................................................30

*Indeed, In re Rocco Co., Inc.,*
  No. 10-18799 DHS, 2014 WL 7404566 (D.N.J. Dec. 29, 2014) ........................23

*Int'l Petroleum Prods. and Additives Co. v. Black Gold S.A.R.L.*,
  115 F. 4th 1202 (9th Cir. 2024) ...............................................................................27

*Isaiah v. JPMorgan Chase Bank*,
  960 F.3d 1296 (2020) .........................................................................................25, 26

*Jerome v. Hertz Corp.,*
  No. 2:12-CV-610-FTM, 2013 WL 6815907 (M.D. Fla. Dec. 24, 2013) .............28

*Lynch v. Johns-Manville Sales Corp.*,
  710 F.2d 1194 (6th Cir. 1983) .................................................................................28

*Matter of Buccaneer Resources, LLC*,
  912 F.3d 291 (5th Cir. 2019) ...............................................................18, 19, 20, 21, 31

*Matter of Educators Grp. Health Tr.*,
  25 F.3d 1281 (5th Cir. 1994) ...................................................................................31

*Miller v. Kresser*,
  34 So. 3d 172 (Fla. 4th DCA 2010) ........................................................................16

*Official Comm. of Unsecured Creds. of PSA v. Edwards*,
  437 F.3d 1145 (11th Cir. 2006) ...........................................24, 25, 36, 37

*O'Halloran v. First Union Nat'l Bank of Fla.*,
  350 F.3d 1197 (11th Cir. 2003) ...................... 14, 23, 24, 25, 26, 27, 34

*Omnipol, A.S. v. Multinational Def. Servs., LCC*,
  No. 8:19-CV-794-T-33TGW, 2019 WL 4891398 (M.D. Fla. June 3, 2019) .......32

*Parry v. Mohawk Motors of Mich.*,
  236 F.3d 299 (6th Cir. 2000).................................................................31

*Perlman v. PNC Bank, N.A.*,
  38 F.4th 899 (11th Cir. 2022) ...............................................................25

*Picard v. Fairfield Greenwich Ltd.*,
  762 F.3d 199 (2d Cir. 2014) .................................................................29

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
  589 U.S. 35 (2020) ............................................................................ viii

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
  443 B.R. 295 (Bankr. S.D.N.Y. 2011) .......................................20, 28, 29

*Seiko Epson Corp. v. Nu-Kote Intern., Inc.*,
  190 F.3d 1360 (Fed. Cir. 1999) ......................................................15, 27

*United States v. Verdunn*,
  89 F.3d 799 (11th Cir. 1996) .................................................................12

*Witko v. Menotte (In re Witko)*,
  374 F.3d 1040 (11th Cir. 2004) .............................................................12

## **Statutes**

11 U.S.C. § 105 .........................................................................9, 10, 11

11 U.S.C. § 362 ....................................................................*Passim*

11 U.S.C. § 541 ....................................................................*Passim*

28 U.S.C. § 158.......................................................................... viii

42 U.S.C. § 1396p ..............................................................2, 3, 4, 6, 8

## **Rules**

Fed. R. Civ. P. 23 .............................................................................................34

## JURISDICTIONAL STATEMENT

This is an appeal of a Final Judgment entered in the United States District Court for the Middle District of Florida (App. 543), following the district court affirming a final order entered by the United States Bankruptcy Court for the Middle District of Florida: the Order (I) Granting Chapter 11 Trustee's Motion to Enforce Automatic Stay on August 5, 2024. (App. 377).

This Court has jurisdiction over this appeal from a final judgment arising from a bankruptcy proceeding pursuant to 28 U.S.C. § 158(d)(l), which provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." The district court had jurisdiction to hear the appeal of the underlying bankruptcy order pursuant to 28 U.S.C. § 158(a), because it was an immediately appealable final order that definitely disposed of the subject dispute.

As stated by Supreme Court in *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 46 (2020), "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." Accordingly, "'automatic-stay rulings by a bankruptcy judge . . . should be appealable as final decisions.'" *See also In re Ellingsworth Residential Community Ass'n, Inc.*, --- F.4th ----, 2025 WL 78887, at *14 (11th Cir. Jan. 13, 2025) (applying *Ritzen* to hold a bankruptcy order that "definitively closes off the possibility of

viii

litigating the [creditor's] claim in state court, forcing the party to remain within the bankruptcy system," is a final, immediately appealable decision); *Commodore Holdings, Inc. v. Exxon Mobil Corp*., 331 F.3d 1257, 1259 (11th Cir. 2003) (order that "ended the particular controversy regarding violation of the automatic stay" is final).

**STATEMENT OF THE ISSUES**

1.　　Whether the district court and the bankruptcy court erred in concluding the 11 U.S.C. § 362(a)(3) automatic stay applies to non-debtor beneficiaries' claims against non-debtor defendants for direct injuries to the beneficiaries' special needs trusts.

2.　　Whether the district court and the bankruptcy court erred in concluding the 11 U.S.C. § 362(a)(1) automatic stay applies to claims against non-debtor defendants arising from direct harm to non-debtor beneficiaries' special needs trusts.

**STATEMENT OF THE CASE**

This appeal ultimately arises from a bankruptcy case, *In re: The Center for Special Needs Trust Administration, Inc.*, and the bankruptcy court's Order granting the Appellee's Motion to Enforce Automatic Stay. Appellants appeal the Order Affirming Bankruptcy Court's Order on Appeal ("Order"), entered by the United States District Court for the Middle District of Florida on February 19, 2025. (App. 538). Appellants' putative class action against non-debtors was incorrectly ruled to violate the automatic bankruptcy stay.

**(i)　Statement of Facts**

This tragic case involves a predatory scheme that began in 2009 and continued at least through 2020 to misappropriate over $100 million of special needs trust assets belonging to the most vulnerable members of our society. (App. 054, ¶ 1; 067–

1

68, ¶¶ 62–63). Appellants are Todd Chamberlin and Kelli Chamberlin, on behalf of their son Clark. (App. 056–67, ¶¶ 7–8). Clark is a 16-year-old boy who, due to a catastrophic brain injury caused by medical malpractice, has been permanently and completely disabled since birth. (App. 099–100, ¶¶ 174–75). Since then, Clark has required round-the-clock care, which he will need for the rest of his life. *Id.*

To hold those responsible for Clark's personal injuries accountable, the Chamberlins filed a complex medical malpractice action in January of 2011. (App. 100, ¶ 176). The Chamberlins settled with approximately half of the defendants named shortly after filing suit, and eventually resolved Clark's claims against all defendants. (*Id.*; App. 101, ¶ 178). The settlements represented crucial funding for Clark's complex needs, and a means to improve his quality of life despite the tragic hand he was dealt. (*Id.*; App. 061–62, ¶¶ 39–41).

In August of 2011, the court overseeing Clark's malpractice case approved the creation of an irrevocable individual special needs trust for the settlement proceeds (named and identified in all court filings as: Clark J. Chamberlin Special Needs Trust), pursuant to 42 U.S.C. 1396p(d)(4)(A). (App. 100, ¶ 176). A special needs trust is a specialized irrevocable trust established for disabled beneficiaries under federal law, *see* 42 U.S.C. § 1396p(d)(4), and typically funded from settlements or

USCA11 Case: 25-10933    Document: 18    Date Filed: 07/02/2025    Page: 18 of 53

recoveries from catastrophic personal injury cases. (App. 061, ¶ 39).[1] A special needs trust's purpose is to allow beneficiaries to receive payments from lawsuit recoveries through distributions from the trust while continuing to qualify for and receive means-tested public assistance benefits like Medicaid. *See* 42 U.S.C. § 1396p(d)(4); App. 062, ¶ 40. Special needs trust beneficiaries are often completely and permanently disabled such that apart from public assistance, their only source of income is distributions from their trust. (App. 062, ¶ 41).

To create and establish Clark's special needs trust, the Chamberlins engaged the law firm Staunton & Fagile. (App. 101, ¶ 177). Staunton & Fagile recommended The Center for Special Needs Trust Administration, Inc. (the "Debtor") serve as trustee (John Staunton, the firm's owner, was also the Debtor's co-founder). (*Id.*; App. 058, ¶ 22). On August 18, 2011, Todd and Kelli, as grantors, executed the Irrevocable Declaration of Trust for Clark as beneficiary, with the Debtor signing that agreement as the trustee and trust's fiduciary. (App. 101, ¶ 177). In July 2014, the Debtor directed the Chamberlins to execute a Pooled Trust Joinder Agreement

---

[1] There are two common types of special needs trusts formed pursuant to § 1396p(d)(4): (a) individual, irrevocable trusts, under § 1396p(d)(4)(A), and (b) pooled trusts, in accordance with § 1396p(d)(4)(C). *See* App. 062, ¶ 43. With a pooled trust, separate sub-accounts are maintained for each beneficiary tracking what assets were contributed, but trust assets are pooled in a master trust account, which in theory allows for better investment opportunities and lower administrative costs. (App. 063, ¶ 44). Additionally, the trustee of pooled special needs trusts created under § 1396p(d)(4)(C) must be a non-profit corporation. *See* 42 U.S.C. § 1396p(d)(4)(C).

3

for the Florida Pooled Trust, even though Clark's trust was irrevocable. *Id.* ¶ 178. Thereafter, assets from settlements in Clark's medical malpractice case were ostensibly placed in the pooled trust, including cash, structured settlement payments, real estate, and a vehicle. *Id*.

The Florida Pooled Trust agreement expressly states that it "establishes a pooled trust, for the sole benefit of the Beneficiaries hereunder, pursuant to 42 U.S.C. §1396p (d)(4)(C)." (App. 243–44). "Sole benefit" is defined to mean "that the Trust and/or a Trust sub-account may not benefit anyone but the Beneficiary for whom a Trust sub-account is established, whether at the time the subaccount is established or at any time for the remainder of the Beneficiary's life[.]" (App. 245). The Florida Pooled Trust Agreement further provides,

> Notwithstanding any contrary provision herein, the Trustee shall not exercise any power in a manner that is inconsistent with a Beneficiary's right to the beneficial enjoyment of the Trust property in accordance with general principles relating to the law of trusts or that is inconsistent with the purpose and intent of this Trust and the individual Trust sub-accounts.

(App. 252).

The pooled trust also contains a spendthrift provision stating in part, "The Grantor and Trustee do not owe any obligation of support to any of the Beneficiaries, and none of the Beneficiaries have any right of entitlement to the Trust corpus or income, except as the Trustee elects to disburse the same in its sole, complete, absolute, and unfettered discretion." (App. 246).

4

Along with Clark's trust, the Debtor served as trustee for approximately 2,000 special needs trusts across the country. (App. 054, ¶ 2). Staunton and co-founder Leo Govoni ("Govoni") incorporated the Debtor in 2000 in Tampa, Florida, and served on its board of directors *until their resignations in 2009 and 2008, respectively*. (App. 064, ¶¶ 48–50; App. 068, ¶ 65; App. 069, ¶ 67; App. 070, ¶ 73). Govoni, however, retained control over special needs trusts the Debtor administered after resigning from his director role. (App. 068, ¶ 66). His company, Boston Asset Management ("BAM"), continued serving as the trusts' investment manager. (App. 075, ¶¶ 89–90). Another Govoni-controlled company, Fiduciary Tax & Accounting Services ("FTAS"), served as the special needs trusts' accountant. *Id.* ¶ 92.

Govoni's control over the special needs trusts, through the entities he owned and through the Debtor, was the avenue for the decade-plus scheme and hundred-million-plus in trust losses at the crux of the class action Appellants filed. (App. 068–69, ¶¶ 66, 69–70). From approximately 2009 through 2020, over $100 million was misappropriated from trusts under the Debtor's administration through a series of transfers to another Govoni-controlled entity, Boston Finance Group ("BFG"). (App. 068, ¶ 63). The transfers of misappropriated trust funds were documented as installments of a purported loan from the Debtor to BFG, which has been in default since 2017. (*Id.*; App. 072, ¶ 80).

To date, Appellants and the putative class of Beneficiaries they seek to

represent have never been made whole for the misappropriation, and their trusts—crucial income for their life needs—remain depleted. (App. 072, ¶¶ 78–81). Only upon the Debtor's February 2024 bankruptcy filing following the scheme's collapse was it revealed to Beneficiaries, for the first time, that their trust assets were gone. (App. 067, ¶ 62).

### (ii)    The Course of Proceedings and Dispositions in the Courts Below

#### *The Debtor's Bankruptcy Filing*

On February 9, 2024 ("Petition Date"), the Debtor filed the underlying bankruptcy proceeding and revealed, for the first time and almost two years after its then-current board of directors claimed to have learned about the predatory scheme, that $100 million had been misappropriated from the special needs trusts under its administration. (App. 041–42). The Debtor's first-day pleadings describe the scheme as follows:

> The Center determined that the purported $100 million loan was made to the Boston Finance Group ("BFG"), a company controlled by The Center's founder, Leo Govoni ("Govoni"). BFG and Govoni appear to have undertaken a multi-year effort to access trust funds under The Center's management while simultaneously ensuring beneficiaries did not receive proper disclosure related to these funds and failing to take any meaningful steps to repay the funds.

(App. 042). As a result, over 1,500 special needs trusts with the Debtor as trustee are missing all or a part of their assets. *Id.*

6

*Appellants' Class Action*

In immediate response to the revelations from the Debtor's bankruptcy filings, Appellants and their counsel began investigating *non-debtor* individuals and entities that played a direct role in the misappropriation of trust assets and Beneficiaries' resulting injuries, filing their Class Action Complaint ("Class Action") against these non-debtor Defendants ("Class Defendants") on February 19, 2024. On April 4, 2024, Appellants filed their Amended Class Action Complaint adding additional non-debtor Class Defendants and alleging a number of "Class Claims" summarized below. (App. 053).

Class Defendant BAM is the Govoni-controlled entity that served as the special needs trusts' investment manager and "took over essentially all duties related to special needs trust assets, including investing and managing trust property and providing information about the special needs trusts to Beneficiaries." (App. 075, ¶ 90). Class Defendant FTAS is the Govoni-controlled entity that provided accounting services to special needs trusts, through which the misappropriation was concealed from Beneficiaries. *Id*. ¶ 92.

The Complaint alleges BAM owed direct duties to Beneficiaries and their trusts "[a]s the fiduciar[y] entrusted to handle and invest [special needs trust] assets." (App. 113, ¶ 211). Similarly, FTAS owed direct duties to Beneficiaries and their trusts "[a]s the fiduciary entrusted to account for [special needs trust] assets." (App.

115, ¶ 227). BAM and FTAS breached their respective duties to Beneficiaries by facilitating and concealing the misappropriation that caused Beneficiaries' trust losses. (App. 113, ¶¶ 23–18; App. 116, ¶¶ 230–33).

Class Defendant BFG is the Govoni-controlled entity that, along with BAM, FTAS, and the Debtor, caused the misappropriation of special needs trust assets, and which directly received and benefitted from the stolen funds. (App. 072, ¶¶ 78–79). Govoni and Staunton are the Debtor's founder's and the beneficial owners and controllers of BFG. (App. 068, ¶ 64). Additionally, Govoni owns and controls BAM and FTAS. (App. 087, ¶ 136). Class Defendant Jonathan Golden is an attorney and Govoni's right-hand man, as well as a controller of BFG. (App. 068, ¶ 64). Class Defendants Boston Holding Company, Prospect Funding Holdings, Prospect Funding Partners, and Prospect Funding Holdings (NY) III are more companies in the web of entities under Govoni's control and used in furtherance of the scheme to misappropriate trust assets, including as fraudulent transferees of property taken from Beneficiaries' trust accounts. (App. 078, ¶¶ 99–101).

Finally, Class Defendant American Momentum Bank is the bank custodian of the special needs trust accounts from which Beneficiaries' funds were misappropriated and transferred to BFG, and provided safekeeping, cash management, and custodian services to the special needs trusts. (App. 083, ¶¶ 119–21). It is also where the Debtor, BFG, Govoni, and other Govoni-controlled

companies banked. *Id.* The Complaint alleges American Momentum Bank owed Beneficiaries and their trusts direct duties of care "[a]s the [special needs trusts'] custodian and . . . fiduciary," and because the trust funds in its custody "were special deposits to be applied only for the particular, designated purposes" authorized by the trust agreements. (App. 084, ¶¶ 122–25; 117, ¶ 236; 118, ¶ 241). American Momentum Bank breached its direct duties to Beneficiaries by facilitating and concealing the misappropriation and resulting trust losses. (App. 120, ¶¶ 250–56). Additionally, the Class Action seeks to hold American Momentum Bank liable for aiding and abetting the Debtor's and BAM's breaches of fiduciary duties owed to Beneficiaries. (App. 126, ¶¶ 279–301).

Crucially, no Class Claim purports to sue for BFG's and Govoni's default on the BFG loan. Not one Class Claim alleges Beneficiaries were injured because BFG defaulted on the purported loan funded with their stolen trust assets. All Class Action tort claims for damages, Counts I–IX, allege Class Defendants' conduct injured Beneficiaries "by the conversion, dissipation, and waste of over $100,000,000 in SNT assets," and seek compensatory damages for those injuries. (App. 114–41).

### *The BFG Loan Adversary Proceeding and the Stay Motion*

Following the Petition Date, Appellee was appointed as the chapter 11 trustee to operate the Debtor's business. (App. 157, ¶ 2).  Shortly thereafter, on April 25, 2024, Appellee filed an adversary proceeding against BFG and Govoni for breach of

the purported BFG loan funded with misappropriated trust funds.[2] (App. 157).

Appellee's adversary complaint alleged in part, "The amounts loaned by the Debtor

were *taken from the Trust Accounts* for the Trusts it managed without authorization

from the Beneficiaries." (App. 159, ¶ 22; 166, ¶ 76).

On the following day, April 26, 2024, Appellee filed a Motion to Enforce

Automatic Stay ("Stay Motion"), requesting the bankruptcy court enter an order

under 11 U.S.C. §§ 105(a) and 362 enforcing the automatic bankruptcy stay as to the

Class Action. (App. 173). The Stay Motion claimed unabashedly that the Class

Claims violate the stay because "the money utilized to fund the Loan appears to have

been misappropriated by the Debtor from the Beneficiaries in order for the Debtor

to fund the Loan to BFG." (App. 175). Nonetheless, Appellee argued the Class

Action violates the automatic stay because each Class Action claim "is not a direct

claim, but rather seeks recovery of the same misappropriated money that funded the

purported Loan by the Debtor to BFG, and derives from the same harm incurred by

the Debtor in connection with BFG's default of the purported Loan and Govoni's

breach of the guaranty." (App. 178–83).

Appellants filed an Objection in Response to Chapter 11 Trustee's Motion to

---

[2] An agreed partial judgment on liability was entered against BFG and Govoni in the BFG Loan adversary proceeding on August 20, 2024, and an agreed final judgment awarding the estate $120,324,391.07 in damages was entered on January 17, 2025. (App. 594).

Enforce Automatic Stay, arguing the Class Action does not allege claims against the Debtor or property of the estate; the Class Claims are for Beneficiaries' direct injuries that Appellee has no standing to pursue; and 11 U.S.C. § 105(a) does not support extending the stay to Class Claims against non-debtors. (App. 202–22) (detailing how and why the Class Claims against each Class Defendant are Beneficiaries' direct claims). Appellee filed a Reply to Appellants' Response to the Stay Motion on July 10, 2024. (App. 231). Appellants filed a Surreply on July 17, 2024. (App. 272).

### *The Bankruptcy Court's Order*

Following a hearing on the Stay Motion, the bankruptcy court entered its Order (I) Granting Chapter 11 Trustee's Motion to Enforce Automatic Stay on August 5, 2024. (App. 377) ("Bankruptcy Order").  It ruled the Class Claims "arise from Debtor funding a $100 million loan to BFG with [special needs trust] Funds, and BFG's subsequent breach and default of the BFG Loan," so they "are derived from[] the Trustee's claim for breach of the Loan Documents" and automatically stayed as property of the estate. (App. 385–89).[3] The bankruptcy court further held the Class Claims against non-debtors violate the stay upon finding them "so intertwined with the claims that the Beneficiaries have against Debtor that they are

---

[3] The bankruptcy court also held "the claims raised in the Class Actions, including claims against any D&O policies, belong to the bankruptcy estate.  *Id.* at 6. However, Appellants have not made a claim against the Debtor's D&O policy.

effectively claims against Debtor." (App. 389).

*The District Court Appeal*

Appellants appealed the bankruptcy court's order to the United States District Court for the Middle District of Florida, arguing the bankruptcy court erred for two primary reasons: (1) the Class Claims are not "claims against the debtor" stayed under § 362(a)(1) because they arise from non-debtor Class Defendants' breaches of duties owed directly to Beneficiaries and their trusts; and (2) the Class Claims are not "property of the estate" stayed under § 362(a)(3) because they do not depend on any injury to the Debtor but rather, seek to compensate Beneficiaries for the direct losses to their trust property that is categorically excluded from the estate under 11 U.S.C. § 541(d)(1). (App. 379–436).

Following oral argument, the district court affirmed the bankruptcy court's order, holding the Class Action violates the automatic stay as an attempt to exercise control over property of the estate, and because "determination of the claims in the [Class Action] will impact the administration of this bankruptcy, whether through collateral estoppel, indemnification, or otherwise." (App. 540–41). As the basis for its ruling, the district court submitted that "[t]he focus of the Appellants' Amended Complaint is on the Debtor and its officers and directors, blaming them for the misappropriation of trust fund assets," making the Class Claims derivative of the Debtor's claims and thus property of the estate. (App. 541). The district court further

12

reasoned that the Class Claims are estate property because the misappropriated trust funds were "voluntarily given to the Debtor to invest, administer, and pay out when appropriate," and had been commingled with the Debtor's own funds. *Id.* This Appeal follows.

### (iii)    Statement of the Standard of Review

Appellants seek reversal of the District Court's Order affirming the bankruptcy ruling that the Class Action is automatically stayed under 11 U.S.C. § 362(a)(1) and (a)(3), whether as an action against the Debtor or as an attempt to control property of the estate. Because "[t]he proper construction of the bankruptcy code by a bankruptcy court or a district court is a matter of law," the Court's standard of review is *de novo*. *United States v. Verdunn*, 89 F.3d 799, 801 (11th Cir. 1996); *See also Baillie Lumber Co. v. Thompson*, 391 F.3d 1315, 1318 (11th Cir. 2004) (reviewing *de novo* district court's ruling that automatic stay applied to plaintiff's suit against non-debtor); *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1042 (11th Cir. 2004) (determination of estate property is question of law reviewable *de novo*).

### SUMMARY OF THE ARGUMENT

Two lower courts have now incorrectly deemed the Class Claims estate property, finding them to be derivative of Appellee's claims to enforce the BFG loan documents. That flawed conclusion relies on a fundamental misunderstanding of the Class Action. Not one Class Claim alleges Beneficiaries were injured because BFG

13

defaulted on the purported loan funded with their stolen trust assets. In fact, the Complaint alleges, "The Loan Documents were no more than pieces of paper meant to farcically substantiate the impermissible transfers from the SNTs to BFG." (App. 070, ¶ 74). Beyond context, the BFG loan has nothing to do with the Class Action's tort claims for damages from the misappropriation of trust assets.

The Class Action against non-bankrupt third parties (none of whom was the Debtor's officer or director during the relevant period) is not an action against the Debtor, and the Class Claims seeking damages for injuries to non-estate trust property are not property of the estate. The district court and bankruptcy court erred as a matter of law in holding the Class Action subject to the 11 U.S.C. § 362(a) automatic bankruptcy stay.

First, the lower courts erred in deeming the Class Action an attempt to control estate property stayed under § 362(a)(3). It is axiomatic that property a debtor held in trust for another, as the Debtor did with Appellants' trust property here, is excluded from the Debtor's bankruptcy estate. *See* 11 U.S.C. § 541(d)(1). Because the Class Action arises from harm to Beneficiaries' non-estate trust property, the Class Claims do not, and indeed cannot, depend on or derive from any injury to the estate.

Rather than follow the black letter law that property a debtor holds in trust for another is excluded from the bankruptcy estate, the lower courts held the Class Claims are estate property *because* the misappropriated funds were held for

14

Beneficiaries by the Debtor in trust. Neither court adhered to nor even addressed the Bankruptcy Code's categorical exclusion of such trust property from the estate. Instead, the reasoning below turned § 541(d)(1) on its head. This fundamental error requires reversal.

Second, because Appellee steps into the Debtor's shoes as its bankruptcy trustee, he lacks standing to assert the Class Action's tort claims according to this Court's on-point precedent, *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197 (11th Cir. 2003), and its progeny. *O'Halloran* instructs that the Debtor, a primary wrongdoer by its own admission, cannot be said to have suffered injury from the scheme it perpetrated. This underscores the lower courts' error: Appellants' injuries—their trust losses—cannot derive from an injury to the Debtor where the Debtor suffered no cognizable injury from the misappropriation at all.

Finally, the district court erred to the extent it held the Class Action against non-bankrupt Class Defendants is automatically stayed because it effectively brings claims against the Debtor. The stay does not apply to non-debtors except in unusual circumstances, which are not present here and which neither court found below.

In sum, Appellants are entitled to sue non-debtors in the Class Action for direct injuries to their non-estate trusts, and the district court erred in holding otherwise. This Court should reverse.

15

**ARGUMENT AND CITATIONS OF AUTHORITY**

"The automatic stay provision of the Bankruptcy Act is designed to shield the debtor from the burdens of litigation during the process of bankruptcy." *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999). Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as an automatic stay of, as relevant here, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding . . . to recover a claim against the debtor that arose before the commencement of the case under this title," and "any act . . . to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3).

Accurately read, the Class Action against non-debtor Class Defendants who had direct duties to and are liable for Beneficiaries' special needs trust losses is not an action against the Debtor or an attempt to control property of its estate. The Debtor need not be shielded from litigation to which it is not a party and for which no damages against it are sought. Thus, the district court erred as a matter of law in holding the Class Action violates the § 362(a) automatic stay. Appellants are entitled to vindicate their rights in the Class Action, and this Court should reverse the erroneous Order affirming the bankruptcy court.

## I. The District Court Erred In Holding the Class Claims Are Subject to the Automatic Stay as Property of The Estate.

The Class Claims are against non-debtors who breached duties directly owed to Beneficiaries and share liability for their injuries, and seek damages to

16

compensate for Beneficiaries' trust losses at Class Defendants' hands. Yet, the district court affirmed the bankruptcy court's incorrect ruling that the Class Claims are estate property and automatically stayed under § 362(a)(3) because they arise from harm derivative to the Debtor's injuries—i.e., BFG's default under the purported loan funded with stolen trust money—and simply seek to recover the BFG loan proceeds.

The district court's erroneous decision rests on fundamental misinterpretations of trust and bankruptcy law. The Bankruptcy Code's plain language and the authorities interpreting it make clear the Class Claims seek to vindicate direct harms to non-estate trust property and belong to the injured Beneficiaries, not the estate. This is true even if the Debtor is pursuing its own claims against non-debtors.

## A. Special Needs Trust Property Is Excluded From The Estate.

The Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," subject to enumerated exceptions. 11 U.S.C. § 541(a)(1). However,

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

17

"Upon  the establishment of a trust, the legal title is held by the trustee, but equitable title rests with the beneficiary." *Miller v. Kresser*, 34 So. 3d 172, 177 (Fla. 4th DCA 2010). Thus, "[b]ecause the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.'" *Begier v. I.R.S.*, 496 U.S. 53, 59 (1990) (citing 11 U.S.C. § 541(d)(1)); *See also In re Marrs-Winn Co., Inc.*, 103 F.3d 584, 590 (7th Cir. 1996) (citing 11 U.S.C. § 541(d)) ("From the plain language of the Code, one can easily conclude that the debtor's bankruptcy estate does not include property held in trust for another.").

Accordingly, § 541(d)(1) plainly dictates that the Class Claims seeking damages for trust losses in which the Debtor has no equitable interest are categorically excluded from the bankruptcy estate. Appellants addressed § 541(d)(1) in their briefing to lower courts, but neither court even mentioned this dispositive Bankruptcy Code provision in its ruling.

Instead, both courts turned § 541(d)(1) on its head when concluding the Class Claims are estate property *because of* the Debtor's trusteeship, since the stolen trust funds "were voluntarily given to Debtor to invest, administer, and pay out when appropriate." (App. 541) (citation modified). In any event, the trust instrument makes clear it was established for Beneficiaries' "sole benefit," and prohibits the Debtor from "exercis[ing] any power in a manner that is inconsistent with a Beneficiary's right to the beneficial enjoyment of the Trust property." (App. 243–

18

45). Accordingly, the Debtor's holding assets in trust for Beneficiaries' benefit means it had no equitable interest and could not retain the property for the Debtor's own use—not the other way around, as both lower courts incorrectly held. *See Begier*, 496 U.S. at 59; *In re Montreal, Maine, & Atlantic Railway, Ltd.*, 888 F.3d 1, 10 (1st Cir. 2018).

A proper application of §541(d)(1) establishes the trust rights under the Debtor's trusteeship—including damages claims against non-debtors for trust losses—cannot be estate property. *Begier*, 496 U.S. at 59.

**B. The Class Action Alleges Beneficiaries' Direct Claims.**

Whether a claim is estate property under § 541(a)(1) depends on the nature of injury involved: "If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate." *Matter of Buccaneer Resources, LLC*, 912 F.3d 291, 293 (5th Cir. 2019) (citing *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008)). Conversely, "direct-injury claims that belong to a particular creditor or group of creditors . . . do[] not involve any harm to the debtor" and "cannot be part of the estate." *Buccaneer*, 912 F.3d at 293; *see also In re J.H. Inv. Services, Inc.*, 413 Fed. App'x 142, 148 (11th Cir. 2011) ("[T]he trustee generally lacks standing to bring claims that belong solely to the estate's creditors, the outcome of which would not affect the bankruptcy estate

or the rights of all other creditors").[4] In other words, if "the injury a creditor is pursuing against a third party does not stem from the depletion of estate assets, the injury is a direct one that does not belong to the estate." *Buccaneer*, 912 F.3d at 295.

The district court erred in affirming the bankruptcy court's implicit, but wrong, conclusion that the Class Claims are estate property and automatically stayed under § 362(a)(3) because (as the lower courts reasoned) Appellants' losses simply derive from BFG's breach of the purported loan documents and the Debtor's claimed injuries therefrom. The Class Claims for trust losses are Beneficiaries' direct claims; they cannot arise from the "depletion of estate assets" because trust property is categorically excluded from the Debtor's estate. *Buccaneer*, 912 F.3d at 295; *See also* 11 U.S.C. § 541(d); *Begier*, 496 U.S. at 59. The Class Claims cannot be "dependent on injury to the estate" where the estate has no equitable interest in the harmed trusts. *Buccaneer*, 912 F.3d at 295; 11 U.S.C. § 541(d).

The district court's Order did not address this direct-versus-derivative legal authority. Instead, it wrongly held the Class Action violates the stay because "[a] cause of action for breach of a loan and against officers and directors of a company is derivative and thereby property of the bankruptcy estate, irrespective of label."

---

[4] A claim for particularized injuries to a specific creditor class is direct. *Seven Seas*, 522 F.3d at 588 ("We . . . dispel any notion that a claim belongs to the estate or is otherwise assertable by the trustee merely because it could be brought by a number of creditors, instead of just one.").

(App. 541). At the outset, the district court misread the Complaint. Appellants took care not to name any of the Debtor's officers or directors when the misappropriation took place as a defendant in the Class Action. *See* App. 070, ¶ 73 (misappropriating transactions began "[s]hortly after Govoni and Staunton resigned from their director positions" with the Debtor).[5] And crucially, the district court's conclusion that the Class Action is merely for "breach of a loan" defies logic. (App. 389). Beneficiaries' injuries—the losses to trust assets through wrongdoing dating back to 2009—never depended on or "derived" from purported harm the Debtor suffered when BFG defaulted years later.

Indeed, Appellee's adversary complaint tacitly admits the estate's claim under the purported BFG loan derives from Beneficiaries' injuries, not the other way around. *See Buccaneer*, 912 F.3d at 293. It alleges, "The amounts loaned by the Debtor were taken from the Trust Accounts for the Trusts it managed without authorization from the Beneficiaries." (App. 159, ¶¶ 21–22). The estate's only

---

[5] Even had the Class Action named the Debtor's officers or directors as defendants, however, the sole authority the district court referenced on this point, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 443 B.R. 295 (Bankr. S.D.N.Y. 2011), would not support its conclusion that the Class Claims are derivative. The *Madoff* claims were held derivative because the investor-claimants had no direct relationship with the debtor's officers and directors they sued, and alleged injuries flowing solely from those officers' and directors' breaches of duties owed to the debtor. *Id.* at 312–13. The *Madoff* court did *not* hold the investors' claims were derivative and estate property merely because they were alleged against the debtor's directors and officers. *Id.*

21

conceivable injury from the misappropriation of trust assets in which it has no equitable interest is its consequential liability to Beneficiaries for the Debtor's role in the scheme—which again, would derive from Beneficiaries' injuries. *See Buccaneer*, 912 F.3d at 293.

Regardless of whether the estate has its own direct claims against one or more Class Defendants, Beneficiaries' direct claims and the estate's direct claims are not mutually exclusive:

> [E]ven when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor. This means that the estate and a creditor may have separate claims against a third party arising out of the same events. . . . To pursue a claim on its own behalf, a creditor must show this direct injury is not dependent on injury to the estate.

*Id.* at 293–94. Here, where the Class Claims are for direct injuries to Beneficiaries' special needs trusts categorically excluded from the estate, § 541(d)(1), they are not derivative of harm to the Debtor or subject to § 362(a)(3)'s automatic stay.

Importantly, Class Claims for aiding and abetting the Debtor's breach of fiduciary duties *owed to Beneficiaries* are not derivative of the estate's claims either. For example, in *Seven Seas*, the bondholder plaintiffs sued non-debtor Chesapeake for aiding and abetting the debtor Seven Seas' fraud and breaches of fiduciary duties owed to the plaintiffs. 522 F.3d at 586. Although the claims against Chesapeake "ultimately ar[o]se from the fact that the bondholders invested in unsecured notes issue[d] by Seven Seas," the court correctly ruled "to the extent that the aiding and

22

abetting fraud claim effectively seeks to hold Chesapeake liable for giving assistance to Seven Seas" in its scheme, "this claim [] alleges a direct injury to the bondholders"—i.e., the consequential loss of "almost all of [bondholders'] investment in the unsecured notes." *Id.* at 580, 585.

It is no different here. The Class Claims may ultimately arise from Beneficiaries entrusting their special needs trust assets to the Debtor, and Appellants seek to hold non-debtor Class Defendants liable, in part, for using the Debtor to misappropriate trust property. Nonetheless, because the Class Action alleges direct injuries to Beneficiaries (the loss of their special needs trust assets), the Bankruptcy Code excludes those claims from the estate. *Id.*; *See also In re Meridian Asset Mgmt., Inc.*, 296 B.R. 243, 257 (Bankr. N.D. Fla. 2003) (where "all of the claims relate solely to the funds taken by [debtors] from specific customers," bankruptcy trustee "is asserting causes of action that clearly run in favor of the defrauded customers and allege no causes of action that are unique to the estate").

The estate's success in recovering money on a contract claim by collecting a judgment arising from the purported BFG loan is not the same as the Class Action seeking tort damages for the Beneficiaries, especially against a Class Defendant like American Momentum Bank.[6] The lower courts' orders confuse that fact, resulting in

---

[6] To no avail, Appellants explained why claims against each Class Defendant are the Beneficiaries' direct claims, not estate claims. (App. 212–22; 413–20). Appellee never rebutted those explanations. Both lower courts failed to engage in the required

23

rulings that the Debtor, the vehicle for the massive special needs trust misappropriation, is the only one with direct claims against the Class Defendants. In fact, the Class Claims are not unique to the Debtor. *Meridian*, 296 B.R. at 257. They are the Beneficiaries' direct claims to bring.

Finally, the district court was wrong to rule the Class Claims belong to the estate because the Debtor commingled special needs trust funds, and (at least in the lower courts' view) those funds are not currently traceable. (App. 541). Appellants do not allege a constructive trust claim that would require tracing comingled assets. *See Arduin v. McGeorge*, 595 So. 2d 203, 204 (Fla. 4th DCA 1992). Nor do the Class Action's tort claims for compensatory damages seek to claw back the specific funds misappropriated from special needs trust accounts and commingled with the Debtor's, making traceability irrelevant to whether the automatic stay applies. Indeed, *In re Rocco Co., Inc.*, No. 10-18799 DHS, 2014 WL 7404566, at *1 (D.N.J. Dec. 29, 2014), the sole case the Order cites on the commingling issue, is inapposite. *Rocco* concerned assets in *the debtor's own* trust account, not assets the debtor held in trust for others' benefit like this case. *Id.*

In sum, the Class Action asserts only Beneficiaries' direct claims. The district court erred in holding it is automatically stayed as estate property.

---

analysis, meaning all Class Defendants were lumped together in the ruling the automatic stay was violated.

24

**C. The Class Claims Cannot Be Estate Property Because Appellee Lacks Standing to Bring Them.**

The district court's Order deeming the Class Claims estate property requires reversal for the additional and central reason that Appellee lacks standing to sue for wrongdoing in which the Debtor participated, and that did not injure the estate.

To satisfy the case or controversy requirement of Article III constitutional standing, "a plaintiff must . . . demonstrate that he has suffered 'injury in fact,' that . . . is 'fairly traceable' to the actions of the defendant, and . . . will likely be redressed by a favorable decision." *O'Halloran*, 350 F.3d at 1202 (citing *Bennett v. Spear*, 520 U.S. 154, 162 (1997)). "A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit the debtor could have initiated had it not been thrown into bankruptcy." *O'Halloran*, 350 F.3d at 1202 (citing 11 U.S.C. §§ 541–42).

In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), the Supreme Court held the bankruptcy trustee lacked sanding to sue an indenture trustee on behalf of the debtor's debenture-holder creditors, in part because "at most, the trustee's claims of misconduct arose from the situation where the debtor and the indenture trustee were *in pari dilecto*." *Id.* at 986.[7]  Relying on *Caplin*, this Court similarly held in *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985–87 (11th Cir. 1990),

---

[7] The doctrine of *in pari delicto* "provides that a wrongdoer may not profit from his wrongful acts." *Official Comm. of Unsecured Creds. of PSA v. Edwards*, 437 F.3d 1145, 1148–49 (11th Cir. 2006).

that a bankruptcy trustee lacks standing to sue third parties on behalf of the debtor's customers for injuries to which the debtor contributed. Analogously, the debtor there misappropriated its customers' funds by diverting them to non-debtor Hutton. *Id.* Noting the scheme "in part [was] because of [the debtor's] misappropriation of the funds of its customers," this Court made clear: "there is simply no basis for standing" in the trustee to sue Hutton for the conversion of customer funds. *Id.* at 987.

The Court reaffirmed this principle in *O'Halloran*, where *in pari delicto* precluded the bankruptcy trustee's standing to sue for damages resulting from the debtor's wrongdoing. 350 F.3d at 1202. The facts in *O'Halloran* are strikingly similar to the Class Action. Like the Debtor here, the *O'Halloran* debtor, Greater Ministries church, purported to operate as a charitable organization but "its significance was largely as a vehicle for a Ponzi scheme" run by Greater Ministries' controllers. *Id.* at 1199. Investor funds "were funneled by Greater Ministries into a single general fund," at First Union bank, "where they were allegedly commingled with other, non-Ponzi revenues." *Id.* Upon the scheme's collapse, Greater Ministries filed bankruptcy and a trustee was appointed over its estate. *Id.* at 1200. Like Appellants' claims against American Momentum Bank here, investors injured by the Greater Ministries scheme sued First Union bank for "aiding and abetting crimes and torts, assisting breach of fiduciary duties, breach of duties to warn and to control and negligence." *Id.* at 1201.

26

The Court made clear in *O'Halloran* that because Greater Ministries was "one of the principal culprits in the Ponzi scheme . . . , neither Greater Ministries nor its bankruptcy trustee can sue anyone, including the defendant, for the Ponzi scheme torts" alleged. *Id.* at 203. As the Court reasoned, the debtor "cannot be said to have suffered injury from the scheme it perpetrated." *Id.* at 1203. Accordingly, the bankruptcy trustee, standing in the debtor's shoes, lacked standing to sue the non-debtor bank "based on the Ponzi claim." *Id.* at 1203 n.4; *see also Edwards*, 437 F.3d at 1150; *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1306–07 (11th Cir. 2020); *Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 901 (11th Cir. 2022). The same conclusion is warranted as to Appellants' Class Claims here.

*Isaiah* is particularly analogous too. In that case, the receiver of two receivership entities that perpetrat[ed] a Ponzi scheme on their investors sued JPMorgan for aiding and abetting the receivership entities' conversion, breach of fiduciary duty, and fraud. *Isaiah*, 960 F.3d at 1300.[8] Applying *O'Halloran*, this Court held the receiver lacked standing to pursue the aiding and abetting claims because "the Receivership Entities cannot be said to have suffered any injury from the Ponzi scheme that the Entities themselves perpetrated." *Id.* at 1307–08. Thus, "any claims for aiding and abetting the torts of the Receivership Entities' corporate insiders

---

[8] Analogous to a bankruptcy trustee, "a receiver obtains only the rights of action and remedies that were possessed by the person or corporation in receivership." *Id.*

27

belong[ed] to the investors who suffered losses from this Ponzi scheme, not the Receivership entities." *Id.* at 1307.

Here, it is undisputed special needs trust assets were "misappropriated *by the Debtor* from the Beneficiaries in order *for the Debtor* to fund the Loan to BFG." (App. 175; *see also* App. 159, ¶¶ 21–22). Accordingly, applying the foregoing authorities, because the Debtor and Class Defendants are *in pari delicto*, Appellee, standing in the Debtor's shoes, lacks standing to bring the Class Claims. *O'Halloran*, 350 F.3d at 1203. And since only claims a trustee has standing to bring are subject to the automatic stay, Appellee's lack of standing precludes § 362(a)'s applicability to the Class Action. *See In re Icarus Holding, LLC*, 391 F.3d 1315, 1319 (11th Cir. 2004) (stay inapplicable to claims bankruptcy trustee has no standing to bring).

Neither court below addressed the *in pari delicto* issue or cited any authority in ruling only Appellee has standing to assert the Class Claims pursuant to § 362(a)(3). Given the Debtor's undisputed role in the misappropriation of special needs trust assets, the district court's holding that Appellee has exclusive standing to bring the Class Claims contravenes this Court's precedent and is wrong as a matter of law. *See Caplin*, 406 U.S. 416; *O'Halloran*, 350 F.3d at 1203. Reversal is required.

## II.    <u>The Class Claims Are Not Subject Automatically Stayed as Claims Against the Debtor.</u>

In a single sentence, the district court incorrectly affirmed the bankruptcy court's erroneous ruling that the Class Claims "are effectively claims against Debtor"

28

and thus subject to the automatic stay. (App. 388, 541). To be clear, the Class Action against only non-debtors—none of which were the Debtor's officers or directors when the relevant conduct occurred—is not automatically stayed as an action against the Debtor under § 363(a)(1). The district court erred in holding otherwise and should be reversed.

### A. Actions Against Non-Debtor Joint Tortfeasors Are Not "Against the Debtor" or Automatically Stayed.

"It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor." *Seiko*, 190 F.3d at 1364 (quotation omitted); *see also, e.g. Int'l Petroleum Prods. and Additives Co. v. Black Gold S.A.R.L.*, 115 F. 4th 1202, 1216 (9th Cir. 2024) (quotations omitted) ("the automatic stay does not apply to actions against non-debtors"); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984) ("[W]e join the other circuit courts in concluding that 11 U.S.C. § 362 stays litigation only against the debtor, and affords no protection to solvent co-defendants."); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of proceeding accorded by § 362 may not be invoked by entities . . . with a similar legal or factual nexus to the Chapter 11 debtor.").

The lower courts ignored the established rule that actions against non-debtors are not automatically stayed, concluding § 362(a)(1) applied because the Class

29

Claims are "effectively claims against Debtor." (App. 388, 541). While the district court did not explain its holding, the bankruptcy court incorrectly reasoned the Class Claims "seek the same recovery as, [and] are derived from, the Trustee's claim for breach of the loan documents," making them "arguably characterized as claims against Debtor, which violates the automatic stay." (App. 389). The bankruptcy court's sole authority on this point was *Madoff*, 443 B.R. at 310. *Madoff* does not support the erroneous ruling.

*Madoff* held two former BLMIS employees' actions against non-debtors "as 'employers' standing in the shoes of BLMIS in their roles as supervisors at BLMIS" were "essentially proceedings against the debtor" and stayed under § 362(a)(1). 443 B.R. at 310. Here, in contrast, Appellants were careful not to sue the Debtor's officers, employers, or supervisors. As noted above, the district court incorrectly read the Class Action Complaint to include claims against Debtors' officers and directors. Nor do the Class Claims allege Class Defendants are liable by "standing in the shoes of" the Debtor; they allege Class Defendants' breaches of independent duties owed to Beneficiaries.

Moreover, following *Madoff*, the Second Circuit correctly made clear in an appeal from the same bankruptcy proceedings that claims against non-debtor third parties are not "against the debtor" when "based on duties owed directly by the defendants to the plaintiffs." *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 208

30

(2d Cir. 2014). The *Picard* plaintiffs were investors in feeder funds that wrongfully channeled investments to the Madoff Ponzi scheme, and their class action complaint "named as defendants professional service providers who audited, administered, or served as custodians of the funds"—just like Class Defendants here, who served as investment managers, custodians, and accountants of Beneficiaries' special needs trusts. *Id.* at 203 & n.3. And like Appellants' Class Action, the *Picard* plaintiffs brought claims for the defendants' negligent misrepresentations and breaches of fiduciary duty owed to investors. 762 F.3d at 203–04. The *Picard* action was not a suit against the debtor subject to § 362(a)(1) given the defendants' direct duties to investors; nor is the Class Action alleging comparable direct claims. *Id.* at 207.

## B. No Unusual Circumstances Support Extending the Stay to Class Defendants, Even Where the Debtor's Conduct Is a Relevant Factor.

The district court adopted the bankruptcy's flawed reasoning that the Class Claims are "so intertwined with the claims that the Beneficiaries have against Debtor that they are effectively claims against Debtor," because the Class Action "really alleges . . . that Debtor breached its fiduciary duty to Beneficiaries by making an improper loan to an insider." (App. 388, 541). To start, this sweeping generalization mischaracterizes the Class Claims. True, Counts V and VI of the Complaint allege certain Class Defendants aided and abetted breaches of the Debtor's fiduciary duties to Beneficiaries, as well as breaches of fiduciary duties by non-debtor BAM. But the automatic stay does not apply to those claims because Class Defendants can be liable

31

for facilitating the misappropriation independent of a judgment against the Debtor. *See, e.g. In re Xenerga, Inc.*, 449 B.R. 594, 600 (Bankr. M.D. Fla. 2011) (automatic stay inapplicable to claim against third parties for assisting debtor's breaches of fiduciary duties, as it does not rely on debtor's "independent liability").

Moreover, other Class Claims allege Class Defendants breached their own fiduciary duties owed to Beneficiaries and their trusts, or negligently breached duties of care owed to Beneficiaries and their trusts. In other words, the Class Claims "allege a breach of a duty of care owed to the plaintiff[s]" by Class Defendants. *See Matter of Educators Grp. Health Tr.*, 25 F.3d 1281, 1286 (5th Cir. 1994) (claims alleging non-debtors' breaches of duties owed to plaintiff not subject to stay).

The Debtor's misconduct's relevance to the Class Claims does not mean they are claims against the Debtor. *See Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2084 n.3 (2024) (quotations omitted) (claims against non-debtors "for which Purdue's conduct is a legally relevant factor . . . neither belong to Purdue nor are they asserted against Purdue or its estate"). Even where "the debtor [is] another potential *defendant*," there is "no authority immunizing a nondebtor third party from being sued for any wrongful conduct merely because the plaintiff might have also had a remedy against the debtor." *Buccaneer*, 912 F. 3d at 296 (emphasis supplied). Rather, "case law is clear that extending a stay to non-bankrupt co-defendants is done rarely, justified only in 'unusual circumstances.'" *DeWitt v. Daley*, 336 B.R.

32

552, 556 (S.D. Fla. 2006) (quoting *Parry v. Mohawk Motors of Mich.*, 236 F.3d 299 (6th Cir. 2000)).

The doctrine allowing a stay of actions against non-debtors in "unusual circumstances" derives from *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), which defines such an exceptional situation as one where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." Importantly, "unusual circumstances *must first be found before a stay is extended to a non-debtor*." *Omnipol, a.S. v. Multinational Def. Servs., LCC*, No. 8:19-CV-794-T-33TGW, 2019 WL 4891398, at *2 (M.D. Fla. June 3, 2019) (emphasis added) (citing *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1096 (9th Cir. 2007)). "Thus, unless and until the bankruptcy court makes this determination, the automatic stay does not apply to the non-debtor defendants." *Id*. But there was no claim of "unusual circumstances" made in this case, and neither order below made no such finding.

Regardless, no unusual circumstances exist to extend the automatic stay to the Class Action against non-debtors. That Class Defendants may be jointly liable with the Debtor for Beneficiaries' losses does not give rise to the rare unusual circumstances exception. *See Dewitt*, 336 B.R. at 557 (when nature of claim provides for "joint and several liability between both a [debtor] corporation and a [non-debtor

33

defendant] . . . it cannot be said that [debtor corporation] is the real party at interest in this case to come within the exception outlined in *Robins*").

Thus, "the court in *Robins* reaffirmed the refusal to grant a stay to a non-debtor 'where the debtor and the non-debtor are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty.'" *Id.* (quoting *Robins*, 788 F.2d at 999) (alterations omitted). Appellants allege Class Defendants are joint tortfeasors with the Debtor and breached their own separate duties of care owed directly to Beneficiaries and their trusts. These separate duties to Beneficiaries rule out any unusual circumstances that would justify extending the stay to non-debtor Class Defendants. *Robins*, 788 F.2d at 999.

## III.  The Class Action Is The Proper Vehicle to Litigate Beneficiaries' Claims.

The bankruptcy court's underlying ruling that the district court erroneously affirmed was premised on Justice Kavanaugh's dissenting opinion in *Purdue Pharma L.P.* which called for a "mandatory collective system" in bankruptcy for all creditors. (App. 382) (quoting *Purdue Pharma*, 144 S. Ct. at 2090 (Kavanaugh, J., dissenting)). However, the *Purdue* majority expressly criticized the dissent's contention that all creditors' collective actions must be handled through the bankruptcy process:

> [Y]es, bankruptcy law may serve to address some collective-action problems, but no one (save perhaps the dissent) thinks it provides a bankruptcy court with a roving commission to resolve all such problems that happen its way, *blind to the role other mechanisms* (legislation, *class actions*, multi-district litigation, consensual

34

settlements, among others) play in addressing them.

*Purdue Pharma*, 144 S. Ct. at 2084 (emphasis added).

The *Purdue* Court's reasoning is nothing new. The Court similarly observed in *Caplin* that a class action by debenture-holder creditors would alleviate the difficulties an action by the bankruptcy trustee asserting those creditors' claims posed. *Caplin*, 406 U.S. at 432. Such issues included the debtor's *in pari delicto* status with non-debtor joint tortfeasors, as well as the fact that a suit by the trustee "on behalf of debenture holders may be inconsistent with any action that they might bring themselves"—likewise present here. *Id.* at 430–32. As the *Caplin* Court reasoned, "Rule 23 of the Federal Rules of Civil Procedure, which provides for class actions, avoids some of these difficulties. It is surely a powerful remedy and one that is available to all debenture holders." *Id.* at 432.

Beneficiaries' claims against non-debtor Class Defendants are particularly well-suited for a class action. Clark's medical malpractice experience is illustrative. He suffered a catastrophic brain injury at birth, disabling him for the rest of his life. (App. 099, ¶¶ 174–76). A lawsuit recovered money from multiple tortfeasors, with the Debtor hired to serve as trustee and fiduciary for the special needs trust established to hold Clark's settlement funds. (App. 100, ¶¶ 176–77). Class Defendants caused or failed to prevent the $100 million misappropriation of trust property in their custody and control, leaving Beneficiaries, including Clark, without

35

the crucial money recovered from the tortfeasors originally sued for their personal injuries. Upon the Debtor's devastating disclosure of the trusts' extensive losses, under Class Defendants' watch and by their torts, the Class Action was filed. Granting Appellee exclusive standing to pursue claims for Beneficiaries' injuries is problematic and indeed, potentially fatal to the claims, as the Debtor is *in pari delicto* with the joint tortfeasor Class Defendants. *See O'Halloran*, 350 F.3d at 1202.

The interests Appellants seek to vindicate in the Class Action are not represented in the bankruptcy case. Appellee's duty is to marshal *the Debtor's assets* to its estate; he does not represent injured Beneficiaries for their direct claims. And usurping Beneficiaries' right to control their own causes of action against non-debtors, which do not hinge on harm to the Debtor or its estate, is not equitable or permitted by the Bankruptcy Code. To do so through the bankruptcy process "would be to perpetuate the [Debtor's] role as a vehicle for . . . fraud, possibly preventing the victims of the fraud from fully recovering their losses." *Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 475 (S.D. Fla. 1990). "Under these circumstances, the individual creditors rather than the Trustee should seek recovery from third parties." *Id.*[9] The bankruptcy court erred in holding otherwise, and the district court erred in

---

[9] Appellees' desire to administer any recovery from the Class Defendants through the bankruptcy estate, where monies recovered would be used to administer the bankruptcy, instead of going directly to the Beneficiaries' special needs trusts is a concern. "If [Beneficiaries] who were harmed by the [misappropriation], on the other hand, sued separately outside of bankruptcy, then those [Beneficiaries] would

affirming the bankruptcy court's incorrect ruling.

## **CONCLUSION**

For the foregoing reasons, the district court erred in affirming the bankruptcy court's ruling that the automatic stay applies to the Class Action. Accordingly, on *de novo* review Appellants respectfully request this Court reverse the district court, finding the Class Claims are not estate property and do not violate the automatic stay, and directing that the Class Action may proceed.

Respectfully submitted this 2nd day of July, 2025.

By: *s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld (FBN 117447)
David L. Ferguson (FBN 981737)
**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
streisfeld@kolawyers.com
ferguson@kolawyers.com

Thomas H. Leeder (FBN 746401)
**LEEDER LAW**
8551 West Sunrise Blvd. | Ste. 202
Plantation, FL 33322
Telephone: (954) 734-2382
pleadings@leederlaw.com

*Counsel for Appellants*

---

not risk dilution through apportionment to senior creditors or unharmed creditors of equal priority," like the estate's administrative creditors. *See Edwards*, 437 F.3d at 1151.

## CERTIFICATE OF COMPLIANCE

### 1. Type-Volume

This document complies with the word limit of FRAP because, excluding the parts of the document exempted by FRAP 32(f), this document contains 9,082 words.

### 2. Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of July, 2025, I electronically filed the forgoing document with the Clerk of the Court using CM/ECF, which will send notice of electronic filing to all attorneys of record.

By: *s/ Jonathan M. Streisfeld*
Jonathan M. Streisfeld